Good afternoon, everyone. We're here for a single argument in Appeal No. 23-2507, Angela Sudholt v. Country Mutual Insurance. Mr. Sokoloff, good afternoon. Thank you, Your Honor. May it please the Court, my name is Eugene Sokoloff and I represent the appellants in this appeal. This is a case about an Illinois company's Illinois law duties to its Illinois members. It's the kind of case that CAFA's exceptions are designed to send directly back to state court. It comes before this court only because the district court can misapply to two of those exceptions. Each of one independently compels remand here. Mr. Sokoloff, what was the point of count four then? As I understand from your brief, this is really a case about what the company was doing. Well, let me answer that question in two ways, if I may. The point of count four is to hold the directors and officers responsible for their role in Country Mutual's failure to live up to its obligations to its members. So individually or as a group? I mean, no one officer could have forced the company to do something or not do something, I would assume. Well, exactly. And that gets into what I was going to offer as the second part of my answer, which is that this claim does not stand freely of the claim against the company. The point is that in the course of running the company's affairs over a decade, this cast of characters that changed over time at various times steered the company to accumulate an unreasonable surplus and in doing so violated their fiduciary duties. Now in the sort of mine run claim seeking the payment of a dividend, the corporation is a necessary party even if only the individual defendants are named. So it's not like this claim could stand alone, although the claims against the company surely could. Why couldn't you just seek damages from directors and officers? I think you could seek damages from the directors and officers. And you are, right? And we do, yes. Okay. Join several liability for everybody? That depends on whether there's a showing of conspiracy. We haven't applied a civil conspiracy here. I don't know that there would be joint and several liability across the same period when these people were in and out of office. But you're not excluding the possibility? We're not excluding the possibility, but that's not, as I understand it, that's not what we've pled in the complaint. But is the measure of damages against them this same $3.5 billion surplus or is it something, are they all responsible for that or is it a different way of measuring damages? So I think the most straightforward damages claim, and you'll note if you look at our the disbursement of this accumulated surplus is Country Mutual for the obvious reason that Country Mutual is actually holding this money, money that it should return to its members. That doesn't exclude the possibility that there may be statutory or other damages available against the directors for their role in that accumulation of the surplus. But the, we are- I'm taking that as a, then it's a different measure of damages answer from you. Yes, I'm sorry. Yes. Okay. I think it is a different measure of damages that the primary relief that's sought here, as we say, from the very beginning of the complaint in paragraph six, all the way through all of the counts as the return of this accumulated surplus. Country Mutual is also the only party against which we seek declaratory and injunctive relief. And again, it's the same effect, a declaration that what they did here was unlawful and an injunction preventing them from doing that anymore. We've also sought findings against the directors and officers, findings that they violated their fiduciary duties, but violated those duties by causing the company's surplus. What's the point of that? What's the point of that? The point of that is to establish that these individuals assisted the company or caused the company. Well, you sued them for liability. That's right. Yes. What's the point in having separate findings or declaratory judgments about that? Your Honor, not having drafted the complaint, I can't tell you exactly why. You're here defending it. It's laid out there. But I think that it's akin to declaratory relief, right? We're asking the court to determine that there was a violation of the director's fiduciary duties. Your pleadings are what got you before us today. That's right. And if you're not ready to explain them, then I don't know who we should talk to. Well, Your Honor, I would say, again, that I don't think that there's a real difference between seeking a declaration that somebody has violated their fiduciary duties and seeking a finding that they've done so. And I think the key point here is that all 46 of these individuals are here only because of the duties they owed as officers and directors of Country Mutual. So they're here in that capacity. On the damages point, I thought it surprises me to hear you suggest that this is all about just getting the money back from Country Mutual as the party that kind of hoarded the surplus, as you will. Because I thought a primary theme of the pleading was, yes, there was a hoarding of surplus, but also there was self-enrichment of the directors. Absolutely. Okay. Wouldn't self-enrichment take the form of distributions of the surplus to directors and officers? Right. So to the extent that an officer has personally benefited from their role in the mismanagement of the company, they might be liable for that. I don't think that adds up necessarily to the entire surplus. No, that's fair. But that sure suggests to me that if you were to... Let's just, for discussion purposes, suggest or suppose you prevail across the board. It would seem to me that prevailing across the board would be getting in the pocket of one or more of the individual defendants for the return of that excess surplus that was paid out as unwarranted compensation. So it is money that was initially taken from the plaintiffs here, the members. The excess surplus is something that they're entitled to. And then the fact that it was then looted from the company by the individual defendants, that is, of course, why they would be liable for that portion of the damages. It is the same money, but I don't think it's the same thing. No, no, no. Right. So when you go back to the colloquy you were having with Judge Wood and with Judge Hamilton, it does seem to me that you're asking for more than just a declaration about the officers and directors. You're asking them to write you a check. We are seeking damages. Yes. I don't think I've stepped away from that in my responses to Judge Wood's questions. The question was simply, is it the same measure of damages that we're seeking from the company? Right. Okay. And I think that there is a distinction there. But, of course, this is not, you know, the individual defendants are not here just for fun. They're here because they played an important role in the breaches of fiduciary duty and of Illinois law. Mr. Sokoloff, before I'd like to ask you some questions about the internal affairs doctrine. Before I do, though, I'd like to just make sure that you are firmly committed that the individual defendants are either all primary or none of them is, right? I don't think that you need to make that decision. I think that it would be strange to decide on the face of this complaint where the individual defendants are pled basically as an undifferentiated mass. It's very difficult to pick out which are primary and secondary. But all you need to determine . . . And you and the other side are telling us there is none on this question. I would not want to suggest that, Your Honor. I think that the only . . . Well, how should we do it? So the only defendant in this case who is alleged not to be an Illinois citizen is Mr. Bateman. So the only thing that matters for the purposes of deciding whether this exception applies is whether he is or is not a primary defendant. And I can give you all the reasons why I think he's not a primary defendant, we think he's not a primary defendant. If you wanted to draw . . . That apply to him and not to all the other individual defendants? Correct. Yes. So if we want to zoom in on defendant Bateman, for example, first of all, he is mentioned by name in just four out of 330 paragraphs in the complaint. He served for two years as the CFO of the company, that's in paragraph 22. He was identified as an officer on country mutual financial statements in paragraph 24. He served as the officer or trustee of some of the for-profit subsidiaries of the company. See, that makes me think he's primary, and here's why. Because the operative period of the complaint, the relevant period that you set forth on page 5 of your brief is 2012 to 2021. Let's call it a 9-10 year period. Sure. 9-10 year. Okay. If Mr. Bateman served as CFO, he served at the beginning of that operative period or near the beginning, 2013 and 2014. And it sure appears that one of your . . . the kind of central allegation is that the firm here developed a pattern and practice of hoarding surplus. If that's true, he's at kind of the very beginning of that period, and he's at that . . . at the beginning holding a quite substantial position. It seems inconceivable that the chief financial officer would play no role in passing upon the level of surplus. So to be clear, I do not think that you need to find he played no role in order to find that he's secondary. The word primary inherently suggests that there is a secondary and a primary defendant. In this case, clearly country mutual is primary. Nobody disputes that. The district court found that as well. The case is all about that. And the defendant, Bateman, is only here because he worked for the company. But I want to address . . . I want to fight the question. So could you have brought . . . I mean, was it just an accident that Bateman winds up as a defendant? Frankly, I think it is an accident . . . Probably was, yes. . . . that he wound up as a defendant. But, yeah, I mean, I'm worried about this primary-secondary idea as well. And that's why I keep thinking, what's the nature of the theory? Did you even need COUNT IV? Or could you have brought this lawsuit relatively unchanged just against country mutual? Are the people who were directing country mutual or at least participating in the direction of country mutual with others somehow more culpable? I'm not sure it's damages you're seeking under people if you're talking about disgorgement, you know, or restitution. It seems like it's really more a set of equitable remedies anyway. But there's . . . you know, there's a lot that makes it difficult to see how these individual defendants fit into the big picture. So I'd like to be sure that I answer your broader questions than Judge Scudder's specific questions about Mr. Bateman. So just starting with the broader question, because I think it illustrates the significance of the other answers. Yes, I think this case could go forward with virtually the same allegations without having named these individuals as defendants. The plaintiffs here have a direct relationship with the company. They're owed something by the company, and each one of the claims bears that out, including COUNT IV the way that it's written. But to get back to defendant Bateman, yes, he was there at the beginning. But if you look at paragraphs 315 to 326 of our complaint that's in COUNT IV, we're describing what happened here. We describe that year in and year out the board and the officers made a decision or failed to consider the possibility of either returning a portion of the surplus that had accumulated or changing TAC. So it's not like defendant Bateman is even alleged to have done anything that set into motion an irreversible course. He was only CFO for two years. Thirty-four of the defendants served longer than that, and 35 served more recently, including another CFO who is not disputed, is a citizen of Illinois, who served for six years. And the other thing is the nature here of the violation, certainly the CFO is important in making sure the board is apprised of the company's financials. But this is, and we plead this in our complaint, you said it in Mashallah, this is a question for the board ultimately. It's a question of the board's discretion. In a complaint that names multiple defendants, must there be secondary defendants? I don't think that there necessarily must be secondary defendants, but it seems very hard to believe that Congress would have thought that a suit along with 46 of its directors and officers could be a 47 primary defendant suit. See, I started with that same intuition. I was with you until I read the complaint. And then when I read the complaint, and it's pretty fact-heavy because it's filed in state court, right? It's a bit of a speaking complaint, as you would expect. It sure looks like the whole theory of excess corporate surplus is hand in hand with director self-enrichment. And so whatever intuition you start the case with, mine, I was exactly with you, I thought, well, your intuition has to give way to what's alleged. So Judge Scudero, I think in any case alleging corporate mismanagement, management is going to play a key role in the allegations. There is the additional set of allegations that talk about what management did with the money that they improperly kept from the plaintiffs. But the plaintiff's injury stems directly from not getting their money back from the company. And so, yes, the defendants are liable for what they did with that money. Yes, they are each liable for that independently. But I don't think that it shifts the government of the complaint from country mutual. Are they liable to every single policyholder? I thought from the Supreme Court's writing in the equitable assurance case that those would be the sorts of claims that would be more like, at best, a derivative action, that the wrong is done to the corporation. Correct. And you'll see that we have pled demand futility in the complaint. Okay. Could we talk a little bit about the internal affairs exception? It would be helpful to me if you would specifically address the LaPlante against Northwestern Mutual case and, as well, your claims brought under the Consumer Protection Statute, which is the one I find hardest to square with your reliance upon the internal affairs doctrine. I understand, Your Honor. And I realize I've cut into my rebuttal, but I want to make sure that I address these. So if I could start just before we get to LaPlante by pointing out that what's critical here is that CAFA does not require that each of the claims in a complaint relate solely to corporate governance. It requires that every claim in the complaint relates to corporate governance. It solely involves a claim relating to. So the fact that the claims here are not strictly corporate governance claims in the form of the LaPlante. Well, is it correct that for all of your claims, the core wrong alleged is the decision to hang on to an excess surplus? Right. And that's why. That board discretionary decision. Exactly, Your Honor. And that's why I think we satisfied the exception. So I think there are two reasons. So you could say that it's the target. You could say that it's the target. Exactly. And I think there are two reasons to look at it as an internal affairs question, and this, I think, will dovetail with my explanation of LaPlante. First, every claim here is brought by country mutuals members to demand the return of a share of their profits to which they're entitled. And a claim that seeks the declaration and payment of a dividend is the archetypal claim that's intracorporate and satisfies the internal affairs doctrine. It also, every claim, as we point out in our brief, requires a court to decide whether it was reasonable for the company to retain the surplus over time, and that implicates the policy concerns that are at issue in the internal affairs doctrine. So, sorry, to get to LaPlante, I understand you want me to address that directly. LaPlante was a very simple case that is nothing like this one. LaPlante was a case where the plaintiffs alleged our annuity contracts required that you pay us a share of your profits. Somewhere along the way, you started paying us out of the interest from a bond fund instead. That breaches the contract. It had nothing to do with how the bond fund was being managed or whether the interest was the appropriate amount of interest, whether the profits had been calculated properly. It was purely a question of whether the contracts, as a matter of substance, allowed the company to make that switch where the payments were coming from. And I think Judge Easterbrook in writing for the court in that decision distinguished this case basically from that one when he said, money paid under a contract does not implicate a company's internal affairs. All you need to know is what the contract says. But the payment of a dividend is a matter for a board's discretion, and that is different. I think that's what we have here. Can I just at least try to voice something? I want to make sure I'm on the same wavelength here. As I understand it, any insurance commissioner in any state where a country like Country Mutual does business can enforce its domestic state insurance law to ensure that a sufficient reserve is maintained, correct? Yes. And your focus here is only then on surplus? Correct. And what we've alleged here is that the company retains something on the order of five times the statutorily required surplus under Illinois law. Well, fine. I read these cases that support your view on internal affairs, and it looks like a very, very steep hill to climb on the merits, frankly. And the more I think about what we see happening in Florida and California with property and casualty insurers going broke and the disastrous consequences that has, it's hard for me at least to leap to a conclusion that management is being too careful. I understand that's the merits, that's not jurisdiction. But if I could just speak to that point directly, the complaint also alleges that this surplus was on the order of twice the average. So we're talking about what other players in the industry thought were a business case. So it's a competitive market, right? I mean, you've got, and this is not new with me, it's in the case law that you've got a competitive market, and both price and security are relevant factors, right? Right. I was going to say, of course, in a competitive market you would expect the premiums to go down. That would mean retaining less surplus. But I take your point about security. That's pretty darn important if you're buying insurance, right? No doubt. No doubt. And, of course, that is an issue that goes to merits. To address your question about consumer protection, the consumer protection claim, I think, it may strike you as being the odd man out. But if you look again at the allegation of what constituted the deception, what constituted the deception here was country mutuals holding itself out as a mutual insurer when, in fact, it had unreasonably retained this premium, this excess premiums, and in doing so failed to provide insurance at cost. The complaint alleges that that obligation to provide insurance at cost is itself within the board's discretion. It's within the board's discretion to determine, Judge Hamilton, directly to your point, what constitutes at cost? What is a reasonable amount to lay away against future risks and, therefore, constitutes part of the cost of providing insurance? And it's that discretion that we've alleged they've breached here. Okay. Very well. We'll give you a couple minutes on rebuttal. Thank you, Your Honor. Thank you. Mr. Hootsell, are you beginning? I am. Okay. Very well. May it please the Court, Alt Hootsell on behalf of Country Mutual Insurance Company. I was going to start at a different place, but given the discussion you just had, let me speak real quickly to the complaint because I think at the end of the day, this is with regard to the home state exception, because I think at the end of the day the complaint tells us is where we must look to make this determination. The plaintiffs concede and represented to the lower court that they are pursuing two independent and alternative paths of recovery for the same damages, one path against the company, that's count one and count two and three, and one path against the directors and officers, and that's count four. Can I ask you whether it would be possible to rule against the individual defendants if the company didn't do anything wrong? If the company didn't do anything? If somebody decided, yeah, $3.5 billion was a reasonable reserve given today's uncertain markets, et cetera, whatever, doesn't that automatically dispose of the individual claims? I think, though, that the analysis would be solely under count one. I think that you could, in fact, have a finding that the company didn't breach its contract because, frankly, this obligation is not in the contract, and you would be left, which is what plaintiff's counsel was talking about with the lower court, you would be left with count four, and that would be a straight-up count against the officers and directors as to whether or not under their fiduciary duties they were obliged to provide insurance at cost. I don't see how that can happen. If the company was paying exactly what it was supposed to and distributing exactly the way it was supposed to be distributing. I think that it is a— the theory of the case against both of these are different. The actors here are the officers and directors, and if the officers and directors acted properly, then you would also not have a claim against the company even if against under anything. I'm turning around the other way and saying if this case had been brought just as counts one, two, and three, forget about count four, you would have had everything adjudicated. I mean, it would have been assessed about whether this mutual insurance company was complying with its duty to sell insurance roughly at cost, whether this holdback of the surplus was okay, and I don't see how. I mean, it reminds me, say, of Monell cases. It reminds me of all sorts of cases where you have a general entity, and if nobody did anything wrong, then the people who are running it, how are you going to hold them liable for a perfect result? I guess I can certainly agree with the proposition that if— and I'm trying to understand the question, that if no one did anything wrong— I'm trying to see how they're interrelated, of course, and so I just don't see how if the real point of this case is to assess whether that surplus was rightfully being held back or whether it should have been distributed, then it seems to me the resolution of that issue is going to finish up everything else that might have been out there for the individual defendants. So surplus is used sort of as a shorthand for all of this. The point of the case is it's a money damages case, and the point ultimately is that the officers and directors, and they also say by contract, owed an obligation to provide insurance at cost. When you pay on a damages judgment, it's going to impact your surplus. When you pay under a contract, it's going to impact your surplus. But the obligation that's at issue is the obligation of the officers and directors and the company to provide insurance at cost. Well, it's the company, and the company acts through its people. It acts through its officers, its directors, its employees. True. That's certainly true. One thing, though, that I would like to highlight is they did not need to bring Count 4. They brought Count 4, and I would ask the court to review the complaint because they are trying mightily to walk a lot of what is in Count 4 back. They brought Count 4. It is a direct claim. It is not a derivative claim. It is a claim for breach of fiduciary duty by the officers and directors. They seek, without exception, an award of statutory, compensatory, and punitive damages such that they are saying that the officers and directors of this company were important enough and their conduct was egregious enough that this court or the lower court should punish them through the imposition of punitive damages. The officers and directors on that lawsuit that the plaintiffs now try to walk back, they're not bit players. They're at the heart of this, and the plaintiffs alleged that. So here's what I think trying to get at what Judge Wood is asking, and I'm going to ask it from a different direction. How can you adjudicate Counts 1 and 2? Just focus on Count 1 and Count 2. How is a court to adjudicate either of those claims without getting into questions about how is a mutual insurance company allowed to run or not run vis-à-vis surplus with respect to regulatory capital and what have you, and hand in glove with that, what are the accompanying obligations of officers and directors? In other words, what gives me pause about your position is you say, well, this can't possibly be about internal affairs because it's about a breach of contract, and the only contract we have is an insurance policy. It can't possibly be about internal affairs because it's about a claim under a consumer protection statute. And I think, well, the label can't answer the question, can it? So don't you have to look at what's the substance of the claim and try to foresee how it's going to be adjudicated? And I don't know how on Count 2, for example, you can get at the alleged misrepresentations without getting into the corporate governance here. I don't know how you could adjudicate the claim. On the ICFA claim? Yeah. So, well, the ICFA claim ultimately will depend on whether or not at the time that the misrepresentation was made while they were consumers thinking about buying the policy there was a false statement made. Exactly. Well, how are you going to gauge that? So that gets into what a trial court three years from now is going to determine is the right evidence to deal with that and what's relevant and what's not relevant. But I don't know that that implicates the internal affairs. I mean, we've moved over to the internal affairs issue. The internal affairs under LaPlante. What LaPlante, I think, was doing was drawing a line between a contract, the claim by the policyholder with their policyholder hat on, seeking to enforce a contract, and the claim, which is in count one, and the claim, which is in our case in count four, by policyholders with their members hat on bringing a fiduciary duty claim against the company. And I think that LaPlante drew a distinction between those claims in terms of the internal affairs. No, but LaPlante dealt with a much narrower kind of claim, not a challenge to the board's overall policy decision about how much of a surplus to maintain. You would agree with me, I hope, that in a for-profit life insurance or insurance company, a suit by shareholders to force the board to declare a dividend would be a matter subject to the internal affairs doctrine? I would. Okay. And at least as I read the applicable case law here, it may be very tough for plaintiffs to win on the merits, but the Lubin and Hill cases certainly make very clear that this is an internal affairs question when you're talking about trying to disgorge excess surplus from a mutual insurance company. Do you have any contrary authority that says, in essence, every state gets to apply its own law to this discretionary decision by the board? And we're in count one on the contract claim at this point. We're not in count four. I'm trying to make sure I know where we are.  Okay. Okay? All right. But focusing in on a board's discretionary decision to issue a dividend to policyholders or not? So in count four, the allegation by the owner of the company as a member against the board for breach of fiduciary duty, I think that that does implicate the internal affairs, against the current board and setting aside the Edgar issue. Forget about current and former. Exactly. Yes. Exactly. In count one, I think that LaPlante is candidly on point. I think LaPlante, in LaPlante they had a language that said, annually the company, the board, and the officers will issue dividends. It was an internal decision. It was a discretionary function. So the alleged breach of contract in count one is that the company did not operate at cost. Correct. Okay. How does that get adjudicated without getting into internal affairs? The evidence that I think is relevant to that is that we will put up evidence as to how much it costs for us to provide insurance to you. But you would allow California and Illinois and Florida courts to reach opposite conclusions. Isn't that right? They could apply their own domestic law to whether Country Mutual was providing coverage at cost. Is that right? I think so. It happens frequently in breach of contract cases. Can you point us to any authority that treats this question, how a mutual insurance company deals with its surplus, with excess surplus, as anything other than an internal affairs doctrine subject to the law of the domicile state? I'm not aware of a case that has tried to frame the argument as a breach of contract other than LaPlante. Is there any way to adjudicate the claim by reading the terms and the conditions of any policy? No. The contract claim. Right. That's what I'm talking about. How in the world could I read an auto or a home or a life policy and answer the question like I could about the annuity in LaPlante? How can I answer the question of whether there was an excess surplus that officers and directors unlawfully hoarded for self-enrichment purposes? To be clear, I think the answer is that what is alleged in our contract is an extra line that said the insurance we provide here under must be provided at cost, period. And I think that we're going to, in fact our intention is, we're going to prove the cost of the insurance that we provided. And then we will have a discussion as to whether or not what we charged them was equal to the cost of the insurance we provided. So I think that it gets dealt with by the trial court like all other contract obligations. It is a pricing proposition. They bought a product. They said the price should have been lower. We will have evidence to adduce what the price should have been. And then the court will make a determination. And your point is that will have nothing, zero, to do with regulatory capital and surplus? I don't think that it does. In all honesty, Your Honor, I don't. And I know that's not before us. It's on the merits. But I don't think that it does. I think it has to do with the amount. If we're obliged to provide insurance to a particular person at cost, we will determine what the insurance cost us to provide, and then we will find out if the rate that we set was high or was low. We measure this all the time. We measure whether or not what was paid was what it cost us to provide insurance. Yeah, but your client's in the business of all kinds of contingencies and incurred but unknown claims. So I would think they would say, yeah, if you want to know what our gross margin is on the home policy for X year or today, we can tell you. But we guarantee you we got some money in the coffers to handle contingencies. We do think surplus is important, as was suggested earlier. And at the end of the day, we don't think that the contract claims, maybe this is another way to speak to this. At the end of the day, and we think LaPlante supports this position, we don't think the contract claims give policyholders, as policyholders, the right through a contract claim to tell the company how to run the company. They have the right to enforce the contract. And that's precisely what your defense is going to be, right? It is one of our defenses, but they've also brought count four, which is a claim as an owner that the company is not being run properly. If there's an avenue for them to talk about how to run the company, it is through count four and not through counts one or two. I think, we believe. Okay, why don't we hear from Mr. Lubman? Thank you. Thank you very much, Judge Scudder. Counsel, David Lubin, I represent the nine individual defendants who've been served and who have appeared in St. Clair County and in the Southern District of Illinois. I'd like to follow up first on a question that Judge Hamilton asked, which is, do you have to find that all of the 46 defendants who've been named in this case are primary in order to decide the home state exception? And to make our point clear, we would agree with Mr. Sokoloff, that really is not an issue before the court. You're up here on de novo review. We're up here on de novo review of the issue of whether Robert Bateman is a primary defendant. He's the only one. We understand that, but your briefs each take absolutist positions. Well, let me clarify then now at oral argument that we think that it may very well be the case, given the broad allegations of malfeasance, the allegations that everyone enriched themselves, everyone received excessive compensation, everyone made independent decisions, we think that it's certainly a permissible decision that all of the defendants are primary. But the issue before the court that you have to decide is, was Robert Bateman primary? But if that's the issue, and I certainly appreciate he's the jurisdictional hook, so to speak, then I don't, reading this complaint, I don't see him playing an outsized role. I don't see him, in the language of the Third Circuit, as the target of the case. He's just one of a group of actors who, over the years, was running the company. And in that capacity, trying to make some sense of this term in the statute, this undefined term, the primary defendant, I think what the Third Circuit and the many courts that have followed it have all said is, you know, is there some targeting? You know, are you the one who's really the moving force behind this? Well, certainly there can be more than one. I don't doubt that, and the company is. But I don't see anything that causes Mr. Bateman to bubble up to the top somehow. Here's what I think bubbles Mr. Bateman up to the top, if I can use that language. Mr. Bateman's position was executive vice president, chief financial officer. Right. And there was another chief financial officer, too. Just one other. There was actually a third who the class action council decided not to name. So there's a third chief financial officer, David Majors, wasn't named in the complaint. He clearly resides outside of Illinois, in North Carolina. Now, our position is class action council know generally the terms of CAFA. Under CAFA, there's really only one reason not to name, two reasons, not to name the prior CFO, and that's because, A, he's diverse, and, B, he's primary. There wouldn't be a harm to naming either Mr. Majors or Mr. Bach. Mr. Bach was the CEO. Plaintiffs don't have to name everybody. I mean, that would be a very litigious position for the law to take. Plaintiffs don't have to name everybody. But when plaintiffs elect specifically not to name someone, there's an inference that can be drawn that the reason is they want to be in state court, of course. But that doesn't make him primary. Those are two separate things. We have 1359 about collusively adding people to create diversity, but there's no analogous statute that says you have to bring in everybody. You don't have to. But I think there's a recognition that by not naming him, plaintiffs understood that the CFO of the company would be primary, if named, just as they named the others. You're just being cautious and blew it in one respect. But let me ask you, just in terms of CAFA's division of authority between federal and state courts, I'm trying to understand why retired executives' decisions about where to retire to should affect where this case winds up, as between federal and state courts. Is there any policy reason you can think of? I don't think there's any policy reason. Just straight mechanics of 1332. It's a matter of would the person, if named, be primary? And would the person, if named, create minimal diversity? But the problem is it's the second of those that's clearly the driver here. Without Mr. Bateman, as far as we can tell from this record, everyone else is Illinois. So that's enough. If you're the plaintiff and you want the case to be in Illinois courts, you're done. You don't have a CAFA problem. You bring in one diverse party, and all of a sudden you're dealing with federal court, which for whatever reason they may not want not to be in. It's not because of his being primary. In fact, it is because he's primary, Judge. And that gets back to what position he held. You're saying so, but I haven't heard any reason for that. He's just one of this massive management people who's come and gone. His duties as Executive Vice President are to report directly to the CEO. He was responsible for managing the financial affairs of the company. For two years. And three months. A quarter of the 10-year period we're talking about. He was primarily responsible for things like monitoring surplus, making decisions about surplus. But if the new people who came in after him didn't like what he was doing with surplus, there were years in which that could have been turned around. Right. But what they're alleging is Mr. Bateman should have done that, and Mr. Bateman didn't. Along with everybody else. But his role and his responsibilities were specifically to head the financial affairs of the company. So if you want to look at facts. But it's advice. Are you arguing that CFOs have the power to dictate company action, apart from presidents and CEOs and boards and other people? What I'm arguing is that a CFO, by the nature of their position, is going to have primary responsibility for making decisions and recommendations to the company about how to manage their financial affairs. Exactly, and that takes you right back to the company as the true target of this litigation. That's where the big money is, the $3.5 billion. It's not whatever Mr. Bateman did. And if we want to start thinking about so-called factors that we should look to to make an objective decision about this, surely the amount one can expect to recover from a person, the share of responsibility for what went on, points along those lines, whether it's direct or derivative. And whatever he does is implemented through the company. Yes, but the allegations of the complaint are that it's his decisions that caused the bloated and excess surplus for a quarter of the period of time that we're talking about. And the allegations are he's responsible for punitive damages, he's responsible for compensatory damages, he's responsible for statutory damages. So why is a quarter of the time primary? It's not more than half. Well, the statute doesn't set a proportional amount, but if you look at a complaint that says, while he was in charge of the company's financial affairs making decisions, the company should have distributed $1.9 billion. Is there any way that Mr. Bateman could be held liable to as much of the class and for as much money to the class as Country Mutual itself? I think that's what the plaintiffs arguably are seeking in this case. If you look at the allegations of the complaint, there's nothing in there that limits the amount of damages sought against Mr. Bateman. And if you look at the proportion of the class, you have to bear in mind that the named plaintiffs themselves were policyholders for the entire 10-year period. Let me ask you a little more generally. You all have studied these handful of cases in great depth. We've come to them recently as courts have struggled with what primary defendant means in this context. We have the committee reports that say, quote, real target, which sounds a lot like obscenity to me in the sense that we have a lot of factors. There are easy cases that we can all imagine, but it's really, really hard to articulate a formula. And I guess it would be helpful to me to hear your best shot at a formula. Well, I will take my best shot, Judge. I think this court has multiple sources for determining a formula if that's what it decides to do. The ultimate decision is Mr. Bateman primary. In Rappo, the court, in my view, didn't set out to announce a formula. It just made the right decision based on the facts of that case, and you can do so here too. But what the majority of courts have looked at are, is the nature of the liability direct or secondary? It's clearly direct against Mr. Bateman. There's no vicarious liability sought. Does it matter if he's indemnified? I don't think it matters on this appeal whether he's indemnified or not. I assume it matters enormously to him. I'm sure it does. It matters enormously to him to be named as a defendant in a $3.5 billion lawsuit for punitive damages and for compensatory damages while he was the CFO. There's nothing in the complaint or in the record period that speaks to indemnification. Indemnification would suggest that country is coming in to indemnify and therefore assuming the secondary liability of his primary liability. So I think that that would not render him less than a primary defendant even if the company did come in because it's still his decisions that are being targeted, and he still has exposure. If there's indemnification, that's not a fact that suddenly absolves him of any of the consequences of being named as a defendant. You all have asserted, and I'm sorry, I don't remember whether it was your brief or your co-counsel's brief, that said that worrying about who the deep pocket is is contrary to established law. And I was wondering what law you think establishes that under these precedents. What I saw citations to were a couple of district court decisions amidst this doctrinal chaos. There are several district court decisions that use the term deep pockets. I think you can read the cases from your sister circuits and find that there's nothing in there that suggests that who has deep pockets is a factor. It's not really mentioned in- I thought the Fifth Circuit was pretty clear that it's relevant. I don't think that that language is apparent in the Fifth Circuit decisions, but the cases that do speak to it look back initially to- there's a case that arose out of a tragic fire at a Rhode Island entertainment venue, and several people died. This is a fireworks at the nightclub? Yeah, fireworks at the nightclub. Yes, Your Honor. And what the court there did in a lengthy and well-reasoned opinion was they looked at these different factors and said, among other things, we can't think it just has to mean who has the deepest pockets. And in fact, there's nothing in the record about who has the deepest pockets. I know we're all- you know, courts make decisions based on common sense. Of course they do. But it's really difficult to say based on a complaint that doesn't distinguish. Right. Well, that circles back to, I guess, my more general question. We have all these factors, and I have some concerns about articulating some kind of highly formal process or standard that could be artfully played into or around. And there are other areas of the law where we kind of count on district judges to exercise a pragmatic savvy as to what's going on, which sounds to me like maybe what Congress meant by real target. And I guess closing, I would just say that the complaint makes Robert Bateman a real target. Given his position, given the amount of money that they claim had built up, that he should have made decisions to distribute. But Robert Bateman and everybody else. I mean, there are just so few references to Mr. Bateman in particular. That takes me back to some of Judge Hamilton's earlier questions, like what really is the difference? This is just a pleading. Well, yes, it's the complaint. It is the pleading that forms the basis for analysis. And what is in there shows that Mr. Bateman was a high-ranking official, not in legal and not in general administrative. He was the high-ranking CFO, and the case is about finances. For that reason, we'd urge the Court to affirm. Thank you very much. Mr. Lubin, thank you. Mr. Sokoloff, we were using quite a bit of time there, appropriately so, I think. Why don't we give you the rebuttal that you asked for, four minutes. Thank you very much, Your Honor. I appreciate the indulgence. Think of it as we're indulging ourselves. I want to start, Judge Hamilton, with what you just said about pragmatic savvy. And I think that goes to exactly what Congress is looking for. Congress knows how to ask courts to apply a test about direct and indirect liability. We know from the local controversy exception right next door to the home state exception that it knows how to tell courts to look to relative exposure and the amount of damages sought. I think, Judge Wood, as you put it for the Court in your decision at heart about the purpose of these exceptions, it really comes down to separating out, you wrote, genuinely national litigation from cases with strong ties to the state. This is not a genuinely national case. It is in this court because, essentially, a mistake. Not, I think, because there's any inference to draw about our views of Bateman's primary and non-primary nature. And it, in every other way, belongs in state court. And what the district court, I think, did here is it missed the forest for the trees. It went for these factors, which maybe can be useful in illuminating the gist, the substance, the gravamen of a complaint in some cases, but not at the expense of looking back at what the case is all about. And what the case is all about here is country mutual. I wanted to go to something Mr. Hutzel said about what our counsel said in the district court. I don't think a fair reading of the transcript of the hearing on this motion is that we are seeking the full extent of damages from, for example, Mr. Bateman personally. What we argued there was this is another way of establishing liability and not that the damages theory was equal. And likewise, I don't think it's true, and I'm very happy to concede here, we are not seeking $3 billion from Mr. Bateman personally. That's just not, I think, a plausible reading of the complaint. Going to the question of LaPlante, I think it was Mr. Hutzel who said that was a case about dividends. I don't think that's correct, and the appellate court's decision there doesn't say much about the claim, but if you look at the district court's decision, it spells out exactly what that claim was about. It was, as you put it, Judge Scudder, it was a narrow claim about whether it was appropriate under the contract to switch which fund the payments were coming from. It had nothing to do with how the company was managing its finances or how the company ought to be run. I think that's all I have for responding to their questions. If there are any more questions, I can answer a few more. Okay, hearing none, thanks to all counsel. We appreciate the quality of briefing and argument. We'll take the case under advisement.